Ronald James **BREWER,**
**Petitioner–Appellant,**

v.

James **HALL, Warden, Respondent–
Appellee.**

No. 03–55974.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 9, 2004.

Filed Aug. 4, 2004.

Stephen M. Lathrop, Torrance, CA, for the petitioner-appellant.

Donale E. De Nicola, Deputy Attorney General, Los Angeles, CA, for the respondent-appellee.

Before T.G. NELSON, TASHIMA and FISHER, Circuit Judges.

FISHER, Circuit Judge:

Ronald Brewer appeals from the district court's denial of his petition for writ of habeas corpus under 28 U.S.C. § 2254. Brewer argues that California Jury Instruction ("CALJIC") 17.41.1 violated his constitutional rights. This case arises under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), and there is no clearly established federal law determined by the Supreme Court that indicates that the use of CALJIC 17.41.1 was constitutionally improper in Brewer's case. We therefore agree with the district court that the California Court of Appeal did not unreasonably apply clearly established federal law in rejecting Brewer's challenge to his conviction.

## I.

Brewer's conviction arose from the robbery of Laura Fifer. As Fifer was exiting her vehicle in front of her apartment complex, Brewer rode by on a bicycle and snatched Fifer's purse from her shoulder. The purse contained ID cards, credit cards and between $40 and $50 in cash. After Fifer entered her apartment and called 911, Brewer returned to shout threats at her from outside her apartment. Brewer left before the police arrived but was ap-

prehended a block away. He gave a false name to arresting officers.

Brewer was charged under California law with two felonies—grand theft and making terrorist threats—and the misdemeanor offense of giving false information to a police officer. At an initial trial, the jury convicted Brewer on the misdemeanor false information charge, but the court declared a mistrial on the two felony counts. At a retrial on the two felony counts, the court gave the second jury CALJIC 17.41.1, which states that:

> The integrity of a trial requires that jurors, at all times during their deliberations, conduct themselves as required by these instructions. Accordingly, should it occur that any juror refuses to deliberate or expresses an intention to disregard the law or to decide the case based on penalty or punishment, or any other improper basis, it is the obligation of the other jurors to immediately advise the Court of the situation.

There was some evidence of trouble in the jury deliberations. The jury deliberated for 2 hours and 15 minutes on the first day, requested a readback of certain testimony and then recessed for the day. On the second day, the foreperson sent a note to the judge stating that "[o]ne juror would like to report that another juror may be considering penalty in his or her decision—based on a statement made during the first hour of our deliberation yesterday." The court called the jury back into the courtroom and reinstructed it with CALJIC 17.41.1. After another day of deliberation and another request for a readback of testimony, the jury returned a guilty verdict on the two felony counts.

During the sentencing phase, the jury heard evidence regarding Brewer's prior felony convictions to help it determine whether his sentence should be enhanced

under California's three strikes law. One juror sent the trial judge a note, stating "[i]f what we are about to do pertains to [3] strikes, I am strongly against it...." The court again instructed the jury with CALJIC 17.41.1, after which the jury unanimously imposed a 26 years and two months to life sentence, consistent with the three strikes law.

Brewer appealed to the California Court of Appeal, which issued a reasoned opinion rejecting his argument that CALJIC 17.41.1 violated his constitutional rights. The California Supreme Court denied his petition for review, and Brewer filed a federal habeas petition in federal district court. Relying on a recommendation from a magistrate judge, the district court denied the petition.

## II.

■ We review de novo the district court's decision on a habeas petition under 28 U.S.C. § 2254. *Clark v. Murphy,* 331 F.3d 1062, 1067 (9th Cir.2003). AEDPA governs, and we are constrained by the "highly deferential standard" of 28 U.S.C. § 2254(d). *Lindh v. Murphy,* 521 U.S. 320, 333 n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). Under § 2254(d)(1), a federal court may not grant a petitioner's habeas petition "with respect to any claim that was adjudicated on the merits in State court proceedings" unless the state court's holding was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." If, as here, the state court's decision was not contrary to or an unreasonable application of existing Supreme Court precedent, then we need not independently reach the question of whether the state court's decision was legally erroneous. *Clark,* 331 F.3d at 1069 (in the context of AEDPA review, "[o]ur own independent consideration of

the constitutional issue is neither relevant, nor necessary to dispose of the question presented").

■ Under the "contrary to" clause, a federal habeas court may grant relief if the state court "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently ... on a set of materially indistinguishable facts." *Williams v. Taylor,* 529 U.S. 362, 412–13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Under the "unreasonable application" clause, a federal habeas court may grant relief "if the state court identifies the correct governing legal principle ... but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413, 120 S.Ct. 1495. "Clearly established Federal law" under § 2254(d)(1) denotes "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade,* 538 U.S. 63, 71–72, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003). The phrase specifically refers to the holdings, as opposed to the dicta, of Supreme Court decisions. *Williams,* 529 U.S. at 412, 120 S.Ct. 1495. If no Supreme Court precedent creates clearly established federal law relating to the legal issue the habeas petitioner raised in state court, the state court's decision cannot be contrary to or an unreasonable application of clearly established federal law. *Dows v. Wood,* 211 F.3d 480, 485–86 (9th Cir.2000).

## III.

■ Brewer argues that the trial court's use of CALJIC 17.41.1 denied him his constitutional right to a jury trial and due process because it improperly allowed the trial court to intrude into the jury's deliberations. We express no independent view as to the constitutional merits of CALJIC 17.41.1. It is clear, however, that the Cali-

fornia appellate court's holding was not contrary to or an unreasonable application of clearly established Supreme Court precedent, because no Supreme Court case establishes that an instruction such as CALJIC 17.41.1 violates an existing constitutional right. Indeed, related statements of the Court have emphasized that "the right to a representative jury [does not include] the right to be tried by jurors who have explicitly indicated an inability to follow the law and instructions of the trial judge." *Lockett v. Ohio*, 438 U.S. 586, 596–97, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978); *see also Sparf v. United States*, 156 U.S. 51, 72–73, 15 S.Ct. 273, 39 L.Ed. 343 (1895) (stating that jurors are bound to follow the law as stated by the trial court). Nor has the Supreme Court found a constitutional violation in removing jurors who are unwilling or unable to follow the trial court's instructions. *Cf. Morgan v. Illinois*, 504 U.S. 719, 730, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992) (discussing purposes of the voir dire process).

Brewer argues that the facts here—in particular, that the trial court repeatedly gave the instruction with the express knowledge that the jury was deadlocked and that at least one juror may have improperly been considering penalty—mean that CALJIC 17.41.1 was constitutionally improper as applied even if not facially unconstitutional. Again, no Supreme Court precedent has created clearly established law that supports this claim. Several Supreme Court cases contain broad statements that jurors should be generally protected from outside interference, *see Remmer v. United States*, 350 U.S. 377, 382, 76 S.Ct. 425, 100 L.Ed. 435 (1956), and that jurors in *federal* trials should not be permitted (although not as a matter of constitutional right) to testify so as to impeach a verdict. *McDonald v. Pless*, 238 U.S. 264, 268, 35 S.Ct. 783, 59 L.Ed. 1300 (1915). These cases do not clearly estab-

lish that the use of CALJIC 17.41.1 was improper in the circumstances present here.

We are unpersuaded by Brewer's argument that two "juror-polling" cases—*Lowenfield v. Phelps*, 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988), and *Brasfield v. United States*, 272 U.S. 448, 47 S.Ct. 135, 71 L.Ed. 345 (1926)—are on-point Supreme Court precedents supporting his claim. Even assuming that giving CALJIC 17.41.1 is analogous to jury-polling (a question we do not decide) the two cases do not support Brewer's argument. In *Lowenfield*, the Court upheld a trial court's decision to ask jurors whether further deliberation would help them reach a verdict. 484 U.S. at 240, 108 S.Ct. 546. In *Brasfield*, the Supreme Court rejected juror polling as "never useful and . . . generally harmful." 272 U.S. at 450, 47 S.Ct. 135. In so doing, however, the Court relied entirely on its supervisory powers over other federal courts; its analysis did not encompass constitutional considerations. *See Lowenfield*, 484 U.S. at 240 n. 3, 108 S.Ct. 546 (discussing *Brasfield*).

We are also unpersuaded by Brewer's reliance on *Estelle v. McGuire*, 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991), as the requisite clearly established Supreme Court precedent under AEDPA. *Estelle* stands for the broad proposition that an erroneous jury instruction can rise to the level of constitutional error if it "so infected the entire trial that the resulting conviction violates due process." *Id.* at 72, 112 S.Ct. 475 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973)). Given, however, that no Supreme Court precedent holds that an antinullification instruction, such as CALJIC 17.41.1, violates due process, we conclude that the California appellate court did not unreasonably apply *Estelle* in upholding the constitutionality of CALJIC 17.41.1.

Brewer's reliance on our decision in *United States v. Symington,* 195 F.3d 1080 (9th Cir.1999), where we held that juror dismissal is impermissible if there is "any reasonable possibility that the impetus for a juror's dismissal stems from the juror's views on the merits of the case," is also misplaced. *Id.* at 1087; *see also United States v. Thomas,* 116 F.3d 606, 621–22 (2d Cir.1997) (prohibiting juror dismissals where the record "discloses any possibility that the request to discharge stems from the juror's view of the sufficiency of the government's evidence"). *Symington* did not establish that such juror dismissals were inappropriate as a matter of constitutional right. It based its analysis on Federal Rule of Criminal Procedure 23(b), which permits the federal district courts to dismiss jurors for cause after deliberations have begun. *See* 195 F.3d at 1085. Moreover, *Symington* is not a Supreme Court case. *See Clark,* 331 F.3d at 1069 (noting that although circuit law may be persuasive in determining whether a state court has unreasonably applied Supreme Court law, "only the Supreme Court's holdings are binding on the state courts and only those holdings need be reasonably applied").

Finally, Brewer points to the California Supreme Court's decision to discontinue use of CALJIC 17.41.1 as support for his argument that the California appellate court unreasonably applied clearly established federal law in upholding his conviction. *See People v. Engelman,* 28 Cal.4th 436, 121 Cal.Rptr.2d 862, 49 P.3d 209 (2002). *Engelman* does not support Brewer's argument. It is true that the California court concluded in *Engelman* that CALJIC 17.41.1 "has the potential to lead members of a jury to shed the secrecy of deliberations [and] to draw the court unnecessarily into delicate and potentially coercive exploration of the subject matter of deliberations." *Id.* at 216. The California Supreme Court, however, discontinued the use of CALJIC 17.41.1 only in future cases, based solely on its supervisory authority over lower California courts. It did not find that the instruction violated an established federal constitutional right; indeed, it explicitly stated that no such constitutional violation resulted from the instruction. *Id.* at 213 (noting that "defendant has not provided any authority, nor have we found any, suggesting that the federal constitutional right to trial by jury ... requires absolute and impenetrable secrecy for jury deliberations in the face of an allegation of juror misconduct, or that the constitutional right constitutes an absolute bar to jury instructions that might induce jurors to reveal some element of their deliberations"). *Engelman* therefore comports with our own assessment of Supreme Court precedent. The California Supreme Court's decision to eliminate CALJIC 17.41.1 from the California courts' repertoire—as wise as that decision may have been—does not make it a clearly established unconstitutional instruction.

In short, Brewer has pointed to no Supreme Court precedent clearly establishing that CALJIC 17.41.1—either on its face or as applied to the facts of his case—violated his constitutional rights. Accordingly, we affirm the district court's denial of Brewer's federal habeas petition.

**AFFIRMED.**