NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JUL 24 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| BRIAN KEITH FIGGE,<br><br>Petitioner-Appellant,<br><br>v.<br><br>SCOTT FRAUENHEIM, Warden,<br><br>Respondent-Appellee. | No.   18-55855<br><br>D.C. No.<br>2:16-cv-07408-DSF-KES<br><br>MEMORANDUM* |

Appeal from the United States District Court
for the Central District of California
Dale S. Fischer, District Judge, Presiding

Submitted May 13, 2020**
Pasadena, California

Before:  WARDLAW, COOK,*** and HUNSAKER, Circuit Judges.

Brian Keith Figge appeals the district court's denial of his petition for a writ

of habeas corpus following his convictions for child sexual assault under California

---

\*       This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\*       The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

\*\*\*       The Honorable Deborah L. Cook, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

Penal Code §§ 269, 286, and 288A.  We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253(a), and we affirm.[1]

We review the denial of a petition for writ of habeas corpus de novo. *Murray v. Schriro*, 745 F.3d 984, 996 (9th Cir. 2014).  Because Figge's petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), we grant the writ only if the state court's decision was "contrary to, or involved an unreasonable application of clearly, established Federal law, as determined by the Supreme Court," or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

1. The California Court of Appeal reasonably determined that the record showed "a demonstrable reality that Juror No. 11 was not willing to engage in the deliberative process," and that Juror No. 11 was therefore properly discharged for failing to deliberate.  All four other jurors whom the trial court interviewed agreed that Juror No. 11 had a closed mind and was refusing to deliberate.  These jurors described Juror No. 11 as actively resisting the process, including by saying "I don't believe in these scenarios," failing to "acknowledge that there was anything there to talk about," and "not cooperating with the process."  Figge argues that some of the jurors' comments are better interpreted as revealing frustration with

---

[1] We grant Figge's unopposed motion for judicial notice.

2

Juror No. 11 for being a holdout against conviction, rather than for failing to deliberate. But we give state-court decisions "the benefit of the doubt," *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam), and "[c]onsidering these comments, it was not unreasonable for the state appellate court to find" that Juror No. 11 refused to deliberate. *Williams v. Johnson*, 840 F.3d 1006, 1010 (9th Cir. 2016); *see Bell v. Uribe*, 748 F.3d 857, 868 (9th Cir. 2014) (upholding dismissal of a holdout juror who also failed to deliberate). The California Court of Appeal instead reasonably concluded that "Juror No. 11 was at times listening and talking, but he was not engaging in an evaluation of other jurors' opinions and he at times withdrew from the deliberations because he did not want to consider the points raised by other jurors."

Nor was the California Court of Appeal's decision based on a defective fact-finding process. Figge argues that the trial court's decision to interview only Juror No. 11 and the four complaining jurors, but not the remaining seven jurors, rendered the fact-finding process defective under *Milke v. Ryan*, 711 F.3d 998, 1007 (9th Cir. 2013). In *Milke*, however, we held that a trial court's fact-finding process was defective because the prosecution violated an "'inescapable' constitutional obligation" to turn over exculpatory evidence under *Brady* and *Giglio*. *Id.* (quoting *Kyles v. Whitley*, 514 U.S. 419, 438 (1995)). By contrast, Figge points to no such obligation here. Although we have encouraged courts to

3

take "great pains" to preserve a jury, *Bell*, 748 F.3d at 868, *Perez v. Marshall*, 119 F.3d 1422, 1427 (9th Cir. 1997), the Supreme Court has never adopted such a requirement. *Cf. Williams*, 840 F.3d at 1010 ("Supreme Court case law in the area of juror bias is sparse."). Further, the defective process in *Milke* was not "because of anything petitioner did or failed to do," but rather the result of the prosecution's independent failure to satisfy its discovery obligation. 711 F.3d at 1007. The fact-finding process here was not concealed from Figge; his counsel participated in it, questioned the five jurors who were interviewed, and argued that the four jurors were criticizing Juror No. 11 as a holdout, rather than for failing to deliberate. Figge did not object to the trial court's fact-finding process or ask to interview the remaining seven jurors, and the trial court said nothing to suggest it would have denied such a request. Because Figge's counsel participated fully in the process and had the opportunity to interview the remaining jurors, but did not, we reject his argument that the fact-finding process was defective.

Therefore, the California Court of Appeal's conclusion that the trial court properly excused Juror No. 11 for failing to deliberate was not based on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

2. The California Court of Appeal's conclusion that Figge's Confrontation Clause rights were not violated was not contrary to, or an unreasonable application

4

of, clearly established federal law. No clearly established law holds that a defendant has a Sixth Amendment right to introduce extrinsic evidence for the purpose of impeachment. *See Nevada v. Jackson*, 569 U.S. 505, 512 (2013) ("[T]his Court has never held that the Confrontation Clause entitles a criminal defendant to introduce *extrinsic evidence* for impeachment purposes."). And the California Court of Appeal reasonably concluded that the jury would not "have received a significantly different impression of [the witness's] credibility had [petitioner's] counsel been permitted to pursue his proposed line of cross-examination." *Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1986).

Figge sought to introduce evidence that Jane Doe 1 had a normal sexual relationship with a previous boyfriend to impeach her statement that "I don't have normal relationships with boyfriends." But the value of this proposed impeachment was low. Jane Doe 1 did not testify that she never had sex with prior boyfriends and, in context, her statement communicated a generalized discomfort with men, rather than a specific inability to have a normal sex life due to the abuse. Moreover, the jury was unmoved by the much stronger impeachment evidence that was offered, including evidence that Jane Doe 1 hated Figge, discrepancies in her testimony about the number of times the sexual assault occurred and Figge's conduct towards her afterwards, and testimony from Jane Doe 1's second boyfriend that she threatened to retaliate against him by making false allegations of

physical abuse against him to the police. Given this evidence, "fairminded jurists could disagree" as to whether the jury would have had a significantly different impression of Jane Doe 1's credibility. *Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (per curiam) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). As such, § 2254(d)(1) precludes relief. *See id.*

**AFFIRMED.**